# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : NO. 10-MC-0057 |
| | : |
| SOUTH CANAAN CELLULAR | : Bankruptcy No. 09-10473 |
| INVESTMENTS, LLC and SOUTH | : |
| CANAAN CELLULAR EQUITY, LLC | : (Jointly Administered with |
| | :   Bankruptcy No. 09-10474) |
| SOUTH CANAAN CELLULAR | : |
| INVESTMENTS, LLC and | : NO. 10-2122 |
| SOUTH CANAAN CELLULAR EQUITY, | : |
| LLC | : (Adversary No. 09-00218) |
|          vs. | : |
| | : |
| LACKAWAXEN TELECOM, INC. and | : |
| FRANK M. COUGHLIN | : |

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                              **August 16, 2010**

This is an appeal from the April 2, 2010 Memorandum and Report of U.S. Bankruptcy Judge Bruce Fox recommending that this Court dismiss Counts I through VII of the plaintiff's adversary complaint and ordering the dismissal of Count VIII of the complaint for failure to state a cause of action. For the reasons which follow, we shall affirm and adopt the analysis and rationale of the Bankruptcy Court's Memorandum and Report in large measure but we shall nevertheless reverse that part of the order and recommendation which declines to afford the debtor-plaintiffs the opportunity to amend their pleading.

# History of the Case[1]

South Canaan Cellular Equity LLC ("SCCE") and South Canaan Cellular Investments, Inc. ("SCCI"), the debtors in these matters, are both limited liability companies formed for the purpose of holding partnership interests in South Canaan Cellular Communications Company, LP ("SCCCC"). SCCCC is a limited partnership which is in the business of providing wireless communications services in Wayne and Pike County, Pennsylvania. SCCE owns 39.8% of SCCCC and SCCI holds a 1% interest in SCCCC and acts as its general partner. SCCCC's two other limited partners are South Canaan Cellular Telephone ("SCTC"), which owns a 10.2% interest, and SCCTC, a Delaware Corporation which holds a 49% interest. Neither SCTC nor SCCTC are debtors in this action.

The two debtor entities are owned by several families and individuals, with no single member or group of members owning a controlling interest. The Edwards family owns approximately 34% of both SCCI and SCCE. Frank Coughlin, who is one of the defendants in the instant adversary action (along with Lackawaxen Telecom, Inc. ["LTI"] of which he is President), also holds a 30.8% interest in both; the Cook family owns approximately 20.1%, the Copp family holds an interest of some 5.4%, the Swingles own

---

[1] These bankruptcy cases were the subject of an earlier appeal before the undersigned at No. 09-CV-2840. Because the underlying facts are the same, we borrow in part from the Statement of Relevant Facts portion of our earlier Memorandum and Order dated November 3, 2009 affirming Judge Fox's denial of Lackawaxen Telecom's motion to dismiss the bankruptcy petitions on the grounds that they were filed in bad faith.

approximately 4.65%, Linda Haagen owns 4.5%, and the Miller family holds an interest of less than 1%. Carolyn Copp is the Chairman, sole member of the Board of Managers and President of SCCI and the Chairman of the Board of Managers and President of SCCE; both entities have Ms. Copp's personal residence in West Chester, Pennsylvania as their principal place of business.

In October 2000, SCCE and SCCI entered into a master loan agreement and supplement with Co Bank ACB in the amount of $7.5 million. In exchange for the loan, the debtor entities gave Co Bank a promissory note in that amount and granted security interests in all of their property including their newly-acquired interests in SCCCC. The monies were used to acquire SCCE and SCCI's interests in the SCCCC limited partnership and to upgrade SCCCC's wireless system. Under the terms of the loan, the outstanding principal balance was to be repaid in 26 consecutive quarterly payments on the 20th day of January, April, July and October of each year commencing in October 2002 and ending in January 2009. Although the debtors initially made the required interest only and two of the quarterly payments due under the loan, they defaulted on their repayment obligations in May 2003.

Despite the default, Co Bank did nothing to foreclose on the note. In or around July 2007, the debtors began negotiating with Co Bank to restructure the loan; the bank initially indicated that it was interested in either a shorter restructured repayment

3

plan or a discounted cash settlement amount. In September 2007, Co Bank advised that it would not settle for less than $5 million and that it was considering a sale of the note. Thereafter, in October 2007, SCCE and SCCI informed Co Bank that they intended to secure the $5 million necessary to purchase the loan and began making arrangements to do so through two lenders. However, on October 25, 2007, Co Bank sold the note to LTI.

The debtors allege in their adversary complaint that "using the confidential information he had acquired as a result of his standing as a member of SCCE and SCCI," Frank Coughlin arranged for LTI[2] to purchase the loan from Co Bank for the sum of $5.25 million "with terms substantially similar to those offered by Co Bank to South Canaan." (Adversary Complaint, Exhibit 1 at ¶26). In so doing, the debtors aver that Mr. Coughlin exploited the "precarious but improving financial circumstances of the Debtors for his own benefit and that of LTI," and "deprived the Debtor of an economic opportunity that was critical to its financial survival." (Adversary Complaint, ¶s23, 27). Additionally, "Coughlin's actions were also prompted by a second motive, namely, a desire to seize control of the operations of the profitable SCCCC by taking control of the partnership interests

---

[2] LTI is alleged to be "a Delaware corporation with its principal place of business located in Rowland, Pennsylvania. LTI provides traditional wire-lines service, as well as associated telecommunications services such as long distance, high-speed DSL, circuits and internet access, in a licensed area within Pike County, PA." (Adversary Complaint, ¶2).

4

in the company that SCCI and SCCE, along with SCTC, had pledged as security for the Co-Borrower loan." (Adversary Complaint, ¶27).

The complaint further avers that although the debtors assert that they have submitted proposals to and endeavored to negotiate with LTI for the restructure of the loan, their offers have all been rejected because of Coughlin and LTI's insistence upon being in control of SCCCC as a condition of any settlement. (Adversary Complaint, ¶28-¶30). On January 23, 2009, LTI and Coughlin declared the debtors to be in default, demanded the right to exercise the partnership interests of the co-borrowers to seize control of SCCCC, and filed a complaint in the District Court for the City and County of Denver, Colorado seeking unpaid principal of $7,120,413 plus interest and counsel fees and seeking relief in the form of a declaration of their purported right to exercise control over the Debtors' interests in SCCCC. After the debtors commenced their bankruptcy proceedings, LTI filed a claim in the amount of $13,543,231.78 against the debtors in that action on June 2, 2009. (Adversary Complaint, ¶s32-33).

On July 9, 2009, the debtors instituted this adversary action against both LTI and Frank Coughlin, asserting seven counts against Mr. Coughlin individually – for breach of the duty of loyalty, breach of the duty of candor/disclosure, usurpation of business opportunity, breach of the duty of good faith, breach

5

of the duty of care, breach of fiduciary duty and breach of the duty of good faith and fair dealing. The final count (VIII) of the adversary complaint asserted a claim for aiding and abetting against LTI only. By his Memorandum and Report dated March 25, 2010, Bankruptcy Judge Fox granted the defendants' motion to dismiss Count VIII against LTI and recommended the dismissal of the seven counts against Frank Coughlin. It is this decision and recommendation that the plaintiffs here appeal.[3]

### Standards of Review

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §158(a), which states:

> The district courts of the United States shall have jurisdiction to hear appeals
>
> > (1) from final judgments, orders, and decrees;
> >
> > (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and
> >
> > (3) with leave of the court, from other interlocutory orders and decrees;
>
> and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section

---

[3] It should be noted that no appeal has been taken from the Bankruptcy Court's finding that the debtors' claim for aiding and abetting against LTI and the debtors' objections to LTI's proofs of claim were core matters or from the Bankruptcy's Court's conclusion that the remaining seven counts against Mr. Coughlin individually were non-core but related matters over which it had subject matter jurisdiction. As noted by Judge Fox, however, not all of the parties consented to his entry of a final judgment on the non-core, related claims against defendant Coughlin and it was for this reason that he issued only a recommendation to this Court that those claims be dismissed. See, Bankruptcy Court Memorandum and Report dated March 25, 2010.

6

> 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

Under Fed. R. Bankr. P. 8013,

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside, unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Thus an appeal from an order of bankruptcy court places the district court in the posture of an appellate tribunal, requiring it to accord the appropriate level of deference to the decision of the bankruptcy judge. Bierbach v. Wagner, Civ. A. No. 1:07-CV-0072, 2007 U.S. Dist. LEXIS 25107 at *4 (M.D. Pa. April 4, 2007). In considering such appeals from bankruptcy court decisions, the district courts are thus required to review the bankruptcy court's findings of fact for clear error and its legal conclusions *de novo*. In re Jersey Tractor Trailer Training, Inc., 580 F.3d 147, 153 (3d Cir. 2009); IRS v. Pransky, 318 F.3d 536, 542 (3d Cir. 2003); In re Krystal Cadillac Oldsmobile GMC Truck, Inc., 142 F.3d 631, 635 (3d Cir. 1998). A finding of fact is clearly erroneous when it is "completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supporting evidentiary data." Pharmaceutical Sales Consulting Corp. v. Accucorp Packaging, Inc., 231 Fed. Appx. 110, 113, 2007 U.S. App. LEXIS 2215, at *7

7

(3d Cir. Jan. 31, 2007); Kool, Mann, Coffee & Co. v. Coffey, 300 F.3d 340, 353 (3d Cir. 2002). It is the appellant's burden to demonstrate why the Bankruptcy Court's findings of fact are clearly erroneous. In re SB Properties, Inc., 185 B.R. 198, 203 (E.D. Pa. 1995). And where the Bankruptcy Court has had cause to exercise its discretion, those exercises are reviewed for abuse thereof, meaning that the determination was "arbitrary, irrational, or contrary to law. Salzano v. Forman, 2009 U.S. Dist. LEXIS 59867 at *9-*10 (D. N.J. July 14, 2009), quoting Borges v. Gonzales, 402 F.3d 398, 404 (3d Cir. 2005) and In re United Healthcare Systems, Inc., 396 F.3d 247, 249 (3d Cir. 2005). See also, Kool, Mann, supra.

## **Discussion**

As noted above, the basis for the South Canaan plaintiff-debtors' adversary complaint is the purported "seizure" by Defendants Frank Coughlin and LTI of the financial opportunities presented by Plaintiffs' negotiations with Co Bank to restructure the $7.5 million debt. Finding that Mr. Coughlin did not owe any fiduciary or other such duties to the plaintiff-debtors, Judge Fox granted the motion to dismiss the sole count against LTI and recommended that the motion to dismiss be granted as to all of the remaining counts against Defendant Coughlin.

Under Fed. R. Bankr. P. 7012(b), Fed. R. Civ. P. Nos. 12(b)-(h) are applied in adversary proceedings such as this one.

Specifically, Rule 7012(b) states the following:

> **(b) Applicability of Rule 12(b)-(h) F.R.Civ.P.**
>
> Rule 12(b)-(h) F.R.Civ.P. applies in adversary proceedings. A responsive pleading shall admit or deny an allegation that the proceeding is core or non-core. If the response is that the proceeding is non-core, it shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy judge. In non-core proceedings final orders and judgments shall not be entered on the bankruptcy judge's order except with the express consent of the parties.

Hence the standards to be applied in evaluating motions for dismissal in adversary actions mirror those in civil cases. And those 12(b)(6) standards dictate that in considering motions to dismiss, the district courts must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." Krantz v. Prudential Investments Fund Management, 305 F.3d 140, 142 (3d Cir. 2002); Allah v. Seiverling, 229 F.3d 220, 224 (3d cir. 2000). In so doing, the courts must consider whether the complaint has alleged enough facts to state a claim to relief that is plausible on its face. Bell Atlantic v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007). "It is therefore no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of the proscribed conduct." Umland v. Planco Financial Services, Inc., 542 F.3d 59, 64 (3d Cir. 2008), quoting Philips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

It should be noted that in addition to the complaint itself, the court can review documents attached to the complaint and matters of public record; a court may also take judicial notice of a prior judicial opinion. McTernan v. City of York, PA, 577 F.3d 521, 526 (3d Cir. 2009); Buck v. Hampton Township School District, 452 F.3d 256, 260 (3d Cir. 2006). Recently, in Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), the Third Circuit examined Iqbal, and made the following observation:

> When presented with a motion to dismiss, district courts should conduct a two part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. (citing Iqbal, 129 S. Ct. at 1949). Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." (citing Iqbal 129 S. Ct. at 1950). In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts...

Finally, when a complaint is dismissed for failure to state a claim upon which relief may be granted, a plaintiff should be granted the opportunity to amend the complaint *unless* the amendment would be inequitable or futile. O'Donnell v. Simon, No. 09-1241, 362 Fed. Appx. 300, 305 (3d Cir. Jan. 28, 2010) citing Grayson v. Mayview State Hospital, 293 F.3d 103, 105-106

(3d Cir. 2002). This is true regardless of whether or not the plaintiff seeks leave to amend. Phillips, 515 F.3d at 236.

In application of the preceding principles, we turn now to an examination of the plaintiffs' complaint which, on its face, endeavors to plead claims against Defendant Coughlin individually for breaches of the duties of loyalty (Count I), of candor/disclosure (Count II), of good faith (Count IV), of care (Count V), of fiduciary duty (Count VI), and of good faith and fair dealing (Count VII). In addition to these breach of duty claims, the complaint also contains counts for usurpation of business opportunity against Mr. Coughlin alone (Count III) and against defendant LTI for aiding and abetting Coughlin in his commission of the preceding torts (Count VIII). All of the claims arise out of LTI's purchase of the debtors' note to Co Bank.

As did the Bankruptcy Court in its Memorandum and Report, we look first to the Delaware Limited Liability Company Act[4] in determining the sufficiency of the plaintiff's complaint. In doing so, we see that "[i]t is the policy" of that Act "to give

---

[4] The parties are in agreement that, as the entities at issue in this litigation are all organized under the law of Delaware, Delaware law is properly applied here. Indeed, in his Memorandum of March 25, 2010 Bankruptcy Judge Fox conducted an exhaustive review of fiduciary responsibilities under Delaware law, most particularly its Limited Liability Company Act, 6 Del. C. §18-101, *et. seq.* As we find Judge Fox's analysis of the law in this area to be both thorough and correct, we adopt it here. Accordingly, in disposing of the debtor-plaintiffs' appeal of that decision, we provide just a summary of the relevant law in the discussion portion of this Memorandum Opinion.

the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements." 6 Del. Code Ann. §18-1101(b). In furtherance of that policy, §18-1101 goes on to read in relevant part as follows:

> (c) To the extent that, at law or in equity, a member or manager or other person has duties (including fiduciary duties) to a limited liability company or to another member or manager or to another person that is a party to or is otherwise bound by a limited liability company agreement, the member's or manager's or other person's duties may be expanded or restricted or eliminated by provisions in the limited liability company agreement; provided, that the limited liability company agreement may not eliminate the implied contractual covenant of good faith and fair dealing.
>
> (d) Unless otherwise provided in a limited liability company agreement, a member or manager or other person shall not be liable to a limited liability company or to another member or manager or to another person that is a party to or is otherwise bound by a limited liability company agreement for breach of fiduciary duty for the member's or manager's or other person's good faith reliance on the provisions of the limited liability company agreement.
>
> (e) A limited liability company agreement may provide for the limitation or elimination of any and all liabilities for breach of contract and breach of duties (including fiduciary duties) of a member, manager or other person to a limited liability company or to another member or manager or to another person that is a party to or is otherwise bound by a limited liability company agreement; provided that a limited liability company agreement may not limit or eliminate liability for any act or omission that constitutes a bad faith violation of the implied covenant of good faith and fair dealing.
>
> .....

Moreover, also in apparent keeping with this policy of contractual freedom, limited liability company members and/or

12

managers[5] are permitted to transact business with those very same LLCs in which they have an interest:

> Except as provided in a limited liability company agreement, a member or manager may lend money to, borrow money from, act as a surety, guarantor or endorser for, guarantee or assume 1 or more obligations of, provide collateral for, and transact other business with, a limited liability company and, subject to other applicable law, has the same rights and obligations with respect to any such matter as a person who is not a member or manager.

6 Del. Code Ann. §18-107.

It thus appears from the above-excerpts of the Act that, with the exception of the prohibition on eliminating the implied covenant of good faith and fair dealing, the extent to which members and/or managers of an LLC have a corresponding fiduciary

---

[5] The terms "manager" and "member" are defined in 6 Del. Code Ann. §18-101 to mean:

> (10) "Manager" means a person who is named as a manager of a limited liability company in, or designated as a manager of a limited liability company pursuant to, a limited liability company agreement or similar instrument under which the limited liability company is formed.
>
> (11) "Member" means a person who is admitted to a limited liability company as a member as provided in §18-301 of this title or, in the case of a foreign limited liability company, in accordance with the laws of the state or foreign country or other foreign jurisdiction under which the foreign limited liability company is formed.

"Manager" is alternatively defined in 6 Del. Code Ann. §18-111 (governing the interpretation and enforcement of limited liability company agreements) as also meaning a person:

> ... "[w]hether or not a member of a limited liability company, who, although not a manager as defined in §18-101(10) of this title, participates materially in the management of the limited liability company; provided, however, that the power to elect or otherwise select or to participate in the election or selection of a person to be a manager as defined in §18-101(10) of this title shall not, by itself, constitute participation in the management of the limited liability company."

duty to the entity and/or to one another is dependent upon the language of the agreement under which the limited liability company was formed. As this is the same conclusion reached by the Bankruptcy Court, we find it to be correct and we therefore affirm.

We likewise discern no error in the Bankruptcy Court's analysis of the general principles of fiduciary duty under Delaware corporate law.[6] As the Delaware Supreme Court noted in the seminal case of <u>Guth v. Loft</u>, 5 A.2d 503, 510 (1939), under Delaware's "rule of corporate opportunity":

> Corporate officers and directors are not permitted to use their position of trust and confidence to further their private interests. While technically not trustees, they stand in a fiduciary relation to the corporation and its stockholders. A public policy, existing through the years, and derived from a profound knowledge of human characteristics and motives, has established a rule that demands of a corporate officer or director, peremptorily and inexorably, the most scrupulous observance of his duty not only affirmatively to protect the interests of the corporation committed to his charge, but also to refrain from doing anything that would work injury to the corporation, or to deprive it of profit or advantage which his skill and ability might properly bring to it, or to enable it to make in the reasonable and lawful exercise of its powers.
>
> The rule that requires an undivided and unselfish loyalty to the corporation demands that there shall be no conflict between duty and self-interest.... If an officer or director of the corporation, in violation of his duty as such, acquires gain or advantage for himself, the law charges the interest so acquired with a trust for the benefit of the

---

[6] This discussion is found at pages 24 through 27 of the Memorandum and Report of March 25, 2010. Again, in the interests of brevity, we see no need to reiterate that discussion in its entirety.

14

> corporation, at its election, while it denies to the
> betrayer all benefit and profit. The rule, inveterate and
> uncompromising in its rigidity, does not rest upon the
> narrow ground of injury or damage to the corporation
> resulting from a betrayal of confidence, but upon a broader
> foundation of a wise public policy that, for the purpose of
> removing all temptation, extinguishes all possibility of
> profit flowing from a breach of the confidence imposed by
> the fiduciary relation.

In the absence of a provision altering the traditional fiduciary duties owed by an LLC's managers and controlling members in a manager-managed LLC, those managers and controlling members owe the traditional fiduciary duties that directors and controlling shareholders in a corporation would (including the traditional duties of loyalty and care). Kelly v. Blum, 2010 Del. Ch. LEXIS 31, *3 (Del. Ch. Ct. Feb. 10, 2010). These traditional fiduciary duties are imposed, however, *only* on managers and those designated as controlling members of an LLC. See, e.g., Kuroda v. SPJS Holdings, LLC, 2010 Del. Ch. LEXIS 57, *25-*26 (Del. Ch. Ct. March 16, 2010)(holding "entirely baseless" argument that Plaintiff had assumed role of fiduciary by virtue of his "central role" in the LLC agreement. "Pursuant to the LLC Agreement, Kuroda was a Non-Managing Member of SPJS Holdings who had no control, power, or authority over a single investor's assets or the actions that SPJS Holdings took. He was neither a manager of SPJS Holdings nor a controlling member, and he thus has no fiduciary duties."); In re USACafes, L.P. Litigation, 600 A.2d 43, 48-49 (Del. Ch. 1991)(extending general fiduciary principles

of trust law to controlling directors and managers of general partner in limited partnership). *In accord*, Gotham Partners v. Hallwood Partners, 817 A.2d 160, 170-172 (Del. S. Ct. 2002); Sonet v. Timber Co., L.P., 722 A.2d 319, 322-323 (Del. Ch. Ct. 1998).

We also concur with the Bankruptcy Court's reading of the debtor-plaintiffs' adversary complaint in the case at bar. To be sure, the substance of the allegations against Coughlin as set forth in the Adversary Complaint are that he:

> (1) "... is an adult individual residing at 6980 Colonial Drive, Fayetteville, NY 13066." (¶3)
>
> (2) "...is President and a shareholder of LTI" who "acted on behalf of LTI and on his own behalf." (¶10)
>
> (3) "...was a member of both SCCI and SCCE and held a 30.8% interest in both companies." (¶11)
>
> (4) "As a member of both SCCI and SCCE, ... owed fiduciary duties to those companies and their members including but not limited to a duty of loyalty, a duty of good faith and a duty not to further his own interests at the expense of SCCI and SCCE." (¶12).
>
> (5) "As a member of each of Plaintiff limited liability companies, ... owed a duty of[:] loyalty, ... candor/disclosure, ... not to usurp Plaintiffs' business opportunities, ... good faith, ... care,... fiduciary duty, ... good faith and fair dealing... to the Plaintiffs. (¶s35, 46, 53, 64, 69, 74, 79).

Since nowhere in the complaint do the debtor-plaintiffs ever specifically aver that Frank Coughlin was a manager, director or controlling member of either SCCI or SCCE and because the debtors have failed to annex a copy of either LLC's operating agreement,

16

we are constrained to agree with Judge Fox's conclusion that the complaint therefore fails to plead viable claims for relief against Defendant Coughlin and against Defendant LTI for purportedly aiding and abetting Coughlin in the breach of his fiduciary duties.[7]

Notwithstanding the soundness of Judge Fox's reasoning, however, we do believe that he erred in one important regard. As previously discussed, it is the general policy of the Federal Rules of Civil Procedure to afford a plaintiff at least one opportunity to amend its complaint *unless* the amendment would be inequitable or futile. See, Phillips v. Allegheny County, O'Donnell v. Simon, and Grayson v. Mayview State Hospital, all supra. Again, this is true regardless of whether or not the plaintiff seeks leave to amend. Phillips, 515 F.3d at 236. In applying this well-settled rule to the complaint at issue here, we cannot definitively find that an amendment would be futile. To be sure, there are allegations that Mr. Coughlin holds a 30.8% interest in both SCCI and SCCE and that he was trying to use that

---

[7] In support of the instant appeal, the debtors heavily rely upon several district court decisions, one of which was written by the undersigned. In carefully reviewing each of these decisions - Bay Center Apartments Owner LLC v. Emery Bay PKI, LLC, 2009 Del. Ch. LEXIS 54 (Del. Ch. Ct. April 20, 2009), Health Robotics, LLC v. Bennett, 2009 U.S. Dist. LEXIS 119945 (E.D. Pa. Dec. 23, 2009) and VGS, Inc. v. Castiel, 2000 U.S. Del. Ch. LEXIS 122 (Del. Ch. Ct. Aug. 31, 2000), however, we find that while it is true that a fiduciary duty was found to be owed by the defendants therein, in each case those fiduciary duties were predicated on the existence of language imposing such a duty in the LLC agreements or, as in the Health Robotics case, at least the *allegation* that such a duty was enumerated in the LLC agreement. Thus, we do not find any disconnect between the Bankruptcy Court's decision in this matter and the debtors' above-cited caselaw.

17

30.8% interest to seize control of SCCCC. (¶s 11, 29-31). While these averments in and of themselves are unquestionably insufficient to support the claims for relief asserted in the adversary complaint, they are, we find adequate to justify granting leave to the plaintiffs to amend. Accordingly, we shall set aside and decline to adopt that portion of the Bankruptcy Court's March 25th Memorandum and Report and Recommendation which declined to grant leave to the debtors to amend their complaint.

    An appropriate order follows.